ROBERT A. LILLARD, APPELLANT, v. G. N. BRADFORD, RESPONDENT.—
243 SW (2) 359.

Springfield Court of Appeals. October 27, 1951.

*Donnelly & Donnelly, Phil M. Donnelly, Paul J. Dillard* for Appellant.

*Jean Paul Bradshaw, Fields & Low, Robert C. Fields* for Respondent.

McDOWELL, J.—This is a suit for personal injuries brought in the Circuit Court of Laclede County, Missouri, December 15, 1949. The action grew out of a collision between two trucks driven by the plaintiff and defendant and is based upon eight grounds of primary negligence. The answer is a general denial of the acts of negligence relied upon in plaintiff's petition and a plea of contributory negligence.

The cause was tried before a jury resulting in a verdict for plaintiff for $500.00. The trial court sustained defendant's motion for new trial on the ground that the court erred in giving plaintiff's Instruction numbered I. Plaintiff appealed.

Plaintiff's petition alleged that on or about the 19th day of July, 1949, he was operating a 1948 Dodge dump truck owned by Ralph Lillard, in an easterly direction over Missouri State Highway No. 32, in Laclede County; that defendant was operating a Dodge pickup truck in a northerly direction on a road which intersects said Highway No. 32 on the south side, approximately 100 yards east of Nebo; that, as plaintiff approached the intersection of said highways, defendant carelessly and negligently drove his truck from the side road into Highway No. 32 in the path of the truck driven by plaintiff, causing a collision between the two trucks. The petition pleads that the collision was a direct result of the negligence of defendant and among the acts of negligence set out in the petition plaintiff alleged defendant was negligent,

"1. In failing to exercise the highest degree of care to keep a lookout for persons and vehicles upon said State highway.

"2. In failing to exercise the highest degree of care to have said pick-up truck under such control that it could readily and reasonably be stopped upon the appearance of danger.

"3. In negligently failing to stop said pick-up truck at the intersection mentioned in evidence.

"4. In carelessly and negligently driving said pick-up truck into the intersection mentioned in evidence directly in the path of the Dodge dump truck being driven by plaintiff."

There were other grounds of negligence alleged in the petition but not submitted to the jury by instruction.

Plaintiff's Instruction numbered I is as follows:

"The court instructs the jury that if you find and believe from the evidence that upon the occasion mentioned in evidence plaintiff was operating a Dodge dump truck in an easterly direction along and over Missouri State Highway No. 32, if you so find, and was approaching the intersection of a side road on the south of said State Highway No. 32, if you so find, and if you find from the evidence that at said time defendant was operating a Dodge pickup truck on said side road in a northerly direction toward said intersection, if you so find, and if you find from the evidence there was a collision on said State Highway No. 32 between said dump truck and said pickup truck, if you so find, and that plaintiff was injured as a result of said collision, if you so find, and if you find from the evidence that the collision, if any, and the injuries to the plaintiff, if any, were caused by the negligence of the defendant in any one of the following particulars, to-wit:

"1. In failing to exercise the highest degree of care to keep a lookout for persons and vehicles upon said State Highway;

"2. In failing to exercise the highest degree of care to have said pickup truck under such control that it could readily and reasonably be stopped upon the appearance of danger;

"3. In negligently failing to stop said pickup truck at the intersection mentioned in evidence;

"4. In carelessly and negligently driving said pickup truck into the intersection mentioned in evidence directly in the path of the Dodge dump truck being driven by plaintiff;

"Then you will find the issues for the plaintiff."

The trial court sustained defendant's motion for new trial using the following language:

"Now on this day, come the parties, by their respective attorneys, and the motion of the defendant for a new trial of this cause is called up and submitted to the court and the court, having duly heard and considered said motion, sustains the same on the ground that the Court erred in giving instruction Number 1 to the Jury."

Appellant's first contention for reversal of the trial court is that the evidence supports each of the grounds of negligence submitted in his instruction numbered I and correctly submits the case to the jury under the law and pleadings.

Appellant's second contention is that if plaintiff had proven any one of the four acts of negligence contained in plaintiff's instruction No. 1, plaintiff was entitled to recover.

Appellant's third contention is that his instruction No. 1 followed the allegations of the petition and all of the allegations of negligence were proven and that the form of this instruction has not been questioned.

Respondent, in his brief and argument, states that the third ground of negligence is the one which contained the error. Respondent states that this assignment of negligence omitted the basic predicate that

respondent had reason to believe that a collision would occur unless he took precautionary measures, and permitted the jury to find him guilty of negligence upon a finding of fact which the law itself would not so denominate.

Section 510.330 R. S. Mo. 1949, provides:

"* * * Every order allowing a new trial shall specify of record the ground or grounds on which said new trial is granted."

The trial court in this case stated of record that he sustained the motion for new trial because of error in plaintiff's instruction numbered I. He did not point out of record what error was in the instruction upon which he relied for granting a new trial. Therefore, there seems to be confusion between appellant and respondent as to the issues involved on this appeal.

If the court made a general finding that there was error without pointing out the grounds upon which he based his judgment, under the law, his ruling is presumed to be erroneous and the burden is upon the defendant to sustain the decision of the trial court. The defendant in this case seems to have assumed that burden by saying that the error committed in instruction No. I is contained in the third ground of negligence submitted therein, to-wit: that respondent negligently failed to stop his truck at the intersection mentioned in evidence. This really is the only question submitted on this appeal but, since appellant raises the question of the sufficiency of the evidence to support the allegations of negligence set out in instruction No. I and further that the instruction that the jury should find for plaintiff if any one of the grounds of negligence were found in favor of plaintiff, we will pass upon all of the questions so presented.

Plaintiff's evidence is to the effect that he was approaching an intersection of a country dirt road with Missouri State Highway No. 32, about 100 yards east of Nebo, in Laclede County, Missouri; that Highway No. 32 runs in an east and west direction and the dirt road runs north and south and intersects said Highway 32 on the south side. The evidence is that Highway 32 is a much-used black-top road, 22 feet in width, with shoulders and that the dirt road was about 22 feet wide and broadened out at the junction to about 40 feet. Plaintiff testified that about 4:30 in the afternoon he was operating his truck, coming down grade on Highway 32, approaching this intersection; that his truck was loaded with gravel; that, as he approached the intersection, he observed defendant's truck approaching the intersection from the south; that he was about 140 feet from the intersection when he first observed defendant's truck, at the time, about 20 feet south of the intersection, traveling at a speed of 15 or 20 miles per hour upgrade towards Highway 32. Plaintiff states he pulled his truck toward the center of the road, thinking defendant would stop before entering Highway 32. He stated defendant, at no time, stopped but entered the intersection at an angle to the west and stopped his truck

with the back end not over three or four feet from the south side of Highway 32, the lane in which plaintiff's truck was traveling. Plaintiff testified that he immediately put on his brakes and was about 135 feet from the intersection at the time. He stated he believed defendant's truck started to move just as his truck struck defendant's truck; that he side-swiped defendant's truck, the main force striking on the back fender and wheel thereof. He testified his brakes were in good condition; that he pulled to the right as far as possible; that at the place of collision there was very little shoulder on the south side of Highway 32 and that he could not have gone further to the right without turning his heavily loaded truck over. He stated he first hit defendant's truck just behind the door and bounced him around and straightened defendant's truck out; that the collision took place not more than ten feet from the intersection. He stated defendant was just sitting in the road and made no attempt to get out. Plaintiff testified he traveled 130 feet from the time he put on his brakes to the point of collision and, after the collision, went across the dirt road at the intersection and into a tree on the east side. He testified that at the time he first saw defendant's truck, he was traveling 40 or 45 miles per hour and that at the time of collision about 20 or 25 miles per hour.

Defendant's testimony is to the effect that defendant could have seen plaintiff's truck when he was within 15 or 20 feet of the intersection, a distance of 1000 feet; that on the south side of Highway 32 there was a culvert and a deep embankment of roughly four feet. He testified he stopped when about 15 or 20 feet of the intersection, looked both ways but saw nothing; that he put his truck in low gear and entered the highway, crossed Highway 32 to the right side and turned west; that he did not see the truck driven by plaintiff until he turned west on the highway. He testified he could see west up the road 150 or 200 yards and could have seen plaintiff's truck had it been there. He stated he did not look any more after he stopped until he was in about the center of Highway 32 when he first saw plaintiff's truck. He stated he was nearsighted and wore reasonably thick glasses; that the sun was shining in his eyes when he pulled up and stopped at the intersection; that his truck was about 18 feet long. He testified the truck driven by plaintiff was about 75 yards from him when he first saw it.

We agree with appellant that there was sufficient evidence offered to sustain the findings of the jury on each of the four grounds of negligence submitted in instruction No I, first, ''in failing to exercise the highest degree of care to keep a lookout for persons and vehicles upon said State highway.''

Under the testimony defendant admits that he did not see the truck driven by plaintiff until he was on Highway 32. Yet, he testifies he could see 150 or 200 yards and other testimony offered in his behalf said he had clear vision of the highway to the west of the intersection for 1000 feet at the time defendant says he stopped. Defendant testi-

fies he was nearsighted and the sun was shining in his eyes. All of these facts required him to use greater caution in entering a much-traveled highway from a side road, especially where traffic from the west was coming down grade toward the intersection. Under his own testimony the jury would have been warranted in finding him negligent under this assignment of error.

Plaintiff testified he was 140 feet from the intersection when he first observed defendant's truck about 20 feet from the intersection, traveling 15 or 20 miles per hour; that the truck did not stop but proceeded into the highway at an angle and stopped blocking plaintiff's lane of travel. If plaintiff had been traveling 40 miles an hour, his truck would have been going approximately 58 feet a second. Thus he was less than three seconds away from this intersection as defendant entered thereon. If, as plaintiff says, his lane of traffic was so barred by defendant's truck and he was coming down hill in a heavily loaded truck, it would have been impossible to have avoided the collision. If plaintiff were traveling at 45 miles an hour, he would have been going 66 feet per second and the collision would have been more certain.

Certainly the jury could have drawn a conclusion from this testimony that the defendant approaching said intersection did not look. If he did look, he did not see. The highest degree of care placed upon him the burden to see for the courts say to look when danger is there to see. Not to see what is plainly visible, where there is a duty to look, constitutes negligence. Woods v. Moore, (Mo. App.) 48 S. W. 2d 202, 207.

Defendant was obligated not only to keep a lookout ahead, but also a lookout laterally. Weis v. Melvin (Mo. Sup.) 219 S. W. 2d 310, 311; Phillips v. Henson (Mo. Sup.) 30 S. W. 2d 1065, 1068; Parkville Milling Co. v. Massman (Mo. App.) 83 S. W. 2d 128, 131.

The second charge of negligence submitted in the instruction was, "In failing to exercise the highest degree of care to have said pick-up truck under such control that it could readily and reasonably be stopped upon the appearance of danger."

It is hardly necessary to state facts under this heading. Defendant testified he put his car in low after having stopped 15 or 20 feet from the intersection and entered this much-traveled public road when all of the evidence shows that danger was imminent and about to fall; that he was running from 10 to 15 miles per hour and did not see plaintiff's truck until it was within about 75 yards of him. He stated the sun was shining in his eyes and he was nearsighted. All of these facts, combined with the testimony of plaintiff, that he stopped his car in plaintiff's lane of traffic, justified the jury's findings. Egan v. Palmer, 221 Mo. App. 823, 293 S. W. 460; Mitchell v. Brown, (Mo. App.) 190 S. W. 354; Roberts v. Wilson, (Mo. App.) 33 S. W. 2d 169, 171; Wright v. Osborn, 356 Mo. 382, 201 S. W. 2d 935, 937.

. The third assignment of negligence in the instruction submitted is, "In negligently failing to stop said pick-up truck at the intersection mentioned in evidence."

It will be noted that plaintiff testified defendant did not stop but operated his truck 15 or 20 miles per hour from a dirt road into a main, much-traveled highway and stopped in plaintiff's lane of traffic.

We agree with plaintiff that under the facts proven in this case that by no stretch of the imagination can section 304.020 (12) R. S. Mo. 1949, be interpreted to permit defendant to enter a much-traveled state highway from a country road where there is danger, as the evidence shows in this case from the traffic thereon, without stopping. While the statute gives to the approaching car on the right, the right-of-way, that is the right to proceed when two cars are approaching and entering an intersection, yet that right is a qualified right and not an absolute right. State v. Adams, 359 Mo. 845, 224 S. W. 2d 54, 58; Lowry v. Mohn (Mo. Sup.) 195 S. W. 2d 652, 655.

As to whether or not defendant was entitled to the right-of-way in question depended upon the conditions at the place and time of the intersection. This was a much-traveled state highway. Defendant was approaching from a side road. Plaintiff's truck was heavily loaded and coming down hill at a rapid rate of speed. Defendant was under a duty to observe the conditions of traffic at this intersection and the evidence fully supports the finding of the jury that, under the circumstances in this case, defendant should have stopped.

The fourth assignment of negligence submitted in this instruction was, "In carelessly and negligently driving said pick-up truck into the intersection mentioned in evidence directly in the path of the Dodge dump truck being driven by plaintiff."

If the jury believed plaintiff's testimony there can be no doubt that the evidence justified its finding in this case under this assignment of error. We think we have stated such facts under the other findings as to fully justify the submitting of this ground of negligence. Roberts v. Wilson, supra; Lowry v. Mohn, supra.

Appellant's contention under (B) is, "If plaintiff had proven any one of the four acts of negligence contained in plaintiff's Instruction No. 1, plaintiff was entitled to recover."

There can be no doubt that plaintiff was entitled to recover if the jury found for plaintiff on any one of the four assignments of error where there was evidence to support each of the assignments. We have found from the record that the evidence does support each of said four assignments of error submitted, so we find that appellant's contention herein is correct. Lerbs v. Machetascheck (Mo. App.) 49 S. W. 2d 240, 242; Yarnell v. Missouri Utilities Co., (Mo. App.) 23 S. W. 2d 225, 228; Yarbrough v. Hammond Packing Co., (Mo. App.) 231 S. W. 72, 73.

The most serious question and the only question actually involved in this lawsuit is the submission of the act of negligence numbered 3 in Instruction No. I.

This ground of negligence so submitted reads as follows:

"In negligently failing to stop said pick-up truck at the intersection mentioned in evidence."

The petition states: "That the said collision and the injuries to plaintiff were directly and proximately caused by the negligence of defendant in the following respects: * * * (f) in failing to stop said truck at said intersection; * * *"

The instruction complained of herein tells the jury: "* * * and if you find from the evidence that the collision, if any, and the injuries to the plaintiff, if any, were caused by the negligence of the defendant in any one of the following particulars, to-wit: * * * 3. In negligently failing to stop said pick-up truck at the intersection mentioned in evidence; * * *

"Then you will find the issues for the plaintiff."

Appellant cites Lerbs v. Machetascheck, supra, to support his contention that the form and substance of this instruction is correct.

The instruction in this case reads as follows:

"'The Court instructs the jury that if you believe and find from the evidence that the collision mentioned and complained of, and injuries to the plaintiff, if any, were caused by the negligence of the defendant, in any one of the following particulars, to-wit:

"'1. In negligently operating and driving his said automobile at an unnecessary, fast, dangerous and negligent rate of speed.

"'2. In negligently failing when operating and driving his said automobile at said time and place to exercise the highest degree of care to keep his said automobile as close to the right-hand side of the highway as practical.

"'3. In negligently failing to keep a lookout for persons and vehicles at said place of collision.

"'4. In negligently failing to have his said automobile under such control that it could readily and reasonably be stopped upon the appearance of danger.'"

Among the objections to this instruction was that it was erroneous because it permitted recovery, if defendant negligently operated his automobile at an unnecessary, fast, and dangerous rate of speed, without specifying any act or omission of defendant that would constitute such negligence. The court held that there was no merit to the contention where the evidence showed defendant was driving 40 miles an hour on the wrong side of the road. The court said the jury would have the right to say whether or not this was negligence. We do not think this supports appellant's contention. The question of whether or not the speed of the defendant's car was negligence was one for the jury under the evidence because there is an express duty resting

upon the defendant not to operate his car at an excessive rate of speed so as to cause injury to others. The doing so would be negligence per se.

In the case at bar there was no duty placed upon the defendant to stop unless there was apparent danger of a collision.

In Rosenkoetter v. Fleer, (Mo. Sup.) 155 S. W. 2d 157, 159, the court gave this instruction numbered I:

"* * * 'that he proceeded to cross said intersection without stopping or checking the speed of his said automobile.'"

The court said:

"Instruction 1 authorized a verdict for plaintiff if the jury found that 'at the time of and immediately before' the collision 'Zuehlke was operating his automobile eastwardly on Lee Avenue and failed to stop his automobile or (in the alternative) failed to check its speed at the intersection of Lee and Turner, but that he proceeded to cross said intersection without stopping or checking the speed of his said automobile.' (Italics and parentheses ours.) It contained no requirement as to finding when the other car entered the intersection or where it was. Appellants say this was error because, under Section 8385 (1) R. S. 1939; Section 7777 (1) Mo. St. Ann. p. 5215, Zuehlke, who was approaching this intersection on Mrs. Rueckholdt's right, had the right of way and was under no duty to stop or check his speed at least until he saw or by the exercise of the highest degree of care could have seen that Mrs. Rueckholdt would continue into and across the intersection without yielding the right of way. "While the right of way of the motorist, entering an intersection from the right, is not an absolute right, certainly there is no duty to stop (as this instruction literally requires) at every street intersection. Stakelback v. Neff, Mo. App., 13 S. W. 2d 575; Moore v. Fitzpatrick, Mo. App., 31 S. W. 2d 590; Pappas Pie & Baking Co. v. Stroh Bros. Delivery Co., Mo. App., 67 S. W. 2d 793; Bramblett v. Harlow, Mo. App., 75 S. W. 2d 626; Crane v. Sirkin & Needles Moving Co., Mo. App., 85 S. W. 2d 911; Sullivan v. Union Electric L. & P. Co., 331 Mo. 1065, 56 S. W. 2d 97."

The court held this instruction erroneous because it authorized a verdict upon failure to stop before entering the intersection regardless of where the other car was at the time, or whether it was moving or standing still and held that the instruction was prejudicial.

We think this case is squarely in point. Section 304.020, R. S. Mo. 1049, paragraph 12 reads:

"An operator or driver of a motor vehicle shall have the right of way over an operator or driver of another motor vehicle who is approaching from the left on an intersecting highway and shall give the right of way to an operator or driver of a motor vehicle approaching from the right on an intersecting highway. The right of way shall mean the right to proceed when two or more vehicles will reach such intersection at approximately the same time; * * *"

Under the facts in the case at bar defendant's truck was approaching the intersection of these two highways from the right and, under the statute, had the right to proceed unless or until he saw or by the exercise of the highest degree of care could have seen that plaintiff's truck would continue into and across the intersection without yielding the right of way.

In Lowry v. Mohn, supra, p. 656, the court states:

"* * * The evidence tends to show that the Chevrolet coach approached the intersection from the right of defendant and prior to defendant's approach; this, as pointed out in the case of Bramblett v. Harlow, Mo. App., 75 S. W. 2d 626, did not give the driver of the Chevrolet coach the unqualified and unconditional right to proceed across the north-south road under all circumstances. But the favored position of the Chevrolet coach to the right of defendant, and its prior approach to the intersection, are circumstances which may be considered in determining the question of negligence of defendant. It is reasonable to say that defendant should have known that motor vehicles moving westwardly upon the east-west highway and reaching the intersection, prior to the time or at approximately the same time as would defendant's, were, under ordinary circumstances, entitled to the right of way; and that drivers of vehicles approaching the intersection from the east would assume that he, defendant, approaching from their left would yield and not undertake to usurp the right of way."

Thus the law is that there must be circumstances which would bring to the mind of the driver of the car approaching from the right that there was danger ahead before there would be a duty to stop or to slacken his speed.

We hold plaintiff's instruction numbered I was erroneous in that it authorized a verdict against defendant for failure to stop before entering the intersection, regardless of where plaintiff's truck was at the time or any other conditions which would lead defendant to believe that a collision would occur if he did not stop. Stakelback v. Neff, (Mo. App.) 13 S. W. 2d 575. In State v. Adams, 359 Mo. 845, 224 S. W. 2d 54, 58, the court states the law thus:

"* * * The important facts are the traffic condition in the south lane of highway 40 at the time appellant came up to and entered upon the pavement, and appellant's negligence, if any, in failing to stop, slow down or swerve as he came up to and entered upon the pavement."

Judgment affirmed and remanded for retrial. *Vandeventer, P. J.,* and *Blair, J.,* concur.